# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **GRAHAM JAY SONNENBERG,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-18-CV-00450-RP** |
| | § | |
| **LORIE DAVIS, Director, Texas** | § | |
| **Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

## ORDER

Petitioner Graham Sonnenberg is pro se in this matter, and has paid the full filing fee for this case. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), Respondent's Answer (ECF No. 11), and Petitioner's Reply and his Request for an Evidentiary Hearing. (ECF Nos. 14 & 15). For the reasons set forth below, Petitioner's Application for Writ of Habeas Corpus and his Request for an Evidentiary Hearing are **denied**.

## STATEMENT OF THE CASE

According to Respondent, the Director has lawful custody of Petitioner pursuant to a judgment and sentence of the 427th District Court of Travis County, Texas. A jury found Petitioner guilty of aggravated assault bodily injury with a deadly weapon and assault strangulation enhanced, and assessed sentences of 16 and 20 years' imprisonment, respectively, which the state court ordered be served concurrently.

### A. Background

The Third Court of Appeals summarized the facts and evidence presented at Petitioner's trial as follows:

Alexis Manley testified that, after she had dated Sonnenberg for several months, he came to her house late one night and committed various violent acts including strangling her with his hands and standing on her throat while wearing boots. She testified that he kicked her in various parts of her body, tore some of her hair out, threw her jewelry at her, slapped her, punched her, bit her, and broke her arm. She hit Sonnenberg during the encounter, and testified that he banged his own head against a doorframe. . . .

A neighbor awakened by Manley's "horrific, blood-curdling scream" looked outside, saw a woman lying limp on the ground, and called 911. . . . Officers found Sonnenberg in Manley's apartment, naked (which is how he typically slept) and bleeding. They arrested him. Austin Police Officer Anthony Nolen responded to the scene and photographed Manley's injuries. He testified that she was very upset. He noted little spots of blood in her eyes and that her eyes, nose, and lips were swollen. She eventually accepted transport to the hospital.

Emergency-room triage nurse Jamie Bertsch testified that Manley said that her boyfriend kicked her and held her on the ground with his boot on her neck until she passed out. Bertsch testified that she saw multiple bites on Manley's body, abrasions on her arms and upper back, and a fractured arm.

*Sonnenberg v. State*, No. 03–14–00530–CR, 2016 WL 3475200, at *1 (Tex. App.–Austin 2016, no pet.). The jury deliberated for four hours before returning its guilty verdict. (ECF No. 12-37 at 16-17).

The jury heard additional testimony from the victim during the punishment phase of the proceedings. (ECF No. 12-22 at 33-51). Additionally, the jury heard testimony from a woman Petitioner dated after the incident in question; she testified Petitioner was both verbally and physically abusive, that he punched, choked, and bit her, and that he damaged her residence and a hotel room. (ECF No. 12-22 at 52-125).[1] The jury deliberated for approximately two and a half hours on Petitioner's punishment. (ECF No. 12-37 at 26 & 28).

---

[1] At the time of his conviction in this matter, Petitioner had been charged with aggravated assault and continuous family violence in two other cases. (ECF No. 12-22 at 12, 61).

Petitioner appealed, asserting: a double-jeopardy claim; the improper admission of expert testimony; trial court error with regard to the denial of his request to poll the jury; and a typographical error in the judgment. *Sonnenberg*, 2016 WL 3475200, at *1. The appellate court modified the judgment to cite the proper subsection of the Penal Code under which Petitioner was convicted and overruled his other claims for relief. *Id.* at *5. Petitioner did not seek discretionary review of the appellate court's decision.

Petitioner sought a state writ of habeas corpus, asserting: he was denied the effective assistance of trial counsel; a double jeopardy claim; and a *Brady* claim. (ECF No. 12-37 at 56-79). The habeas trial court, which was not the convicting court, designated issues and ordered Petitioner's trial counsel to submit an affidavit addressing Petitioner's allegations of ineffective assistance of counsel. The state habeas trial court made findings of fact and recommended the writ be denied. (ECF No. 12-36 at 26-29). The Court of Criminal Appeals denied the writ without written order on the findings of the trial court. (ECF No. 12-27).

**B. Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. His was denied the effective assistance of trial counsel;

2. The prosecution committed *Brady* error by not timely providing medical records showing that the victim sustained one of her injuries by falling down stairs rather than from the assault; and

3. His convictions for aggravated assault and strangulation assault are duplicative offenses and therefore his conviction and sentencing on both counts violates his right to be free of double jeopardy.

(ECF No. 1 at 9-21).

### C. Exhaustion of State Court Remedies

Respondent allows the petition is timely and not successive. (ECF No. 11 at 5). Respondent allows Petitioner's claims were exhausted in the state courts. (*Id.*).

**ANALYSIS**

### A. The Antiterrorism and Effective Death Penalty Act of 1996

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted).

**B. The *Strickland* Standard**

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, the petitioner must establish counsel's performance was deficient and the deficient performance prejudiced the defense. *Id.* at 687. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008).

Counsel's performance is deficient when it "amount[s] to incompetence under 'prevailing professional norms . . .'" *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).

To demonstrate prejudice, a federal habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Because this showing of prejudice must be "rather appreciable," a mere allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994); *see*

*also Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). "'The likelihood of a different result must be substantial, not just conceivable.'" *Trevino v. Davis*, 829 F.3d 328, 351 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 179 (2018) (quoting *Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012)).

An ineffective assistance of counsel claim fails if the petitioner cannot establish both deficient performance and prejudice; accordingly, the Court need not evaluate both prongs of the test if the petitioner makes an insufficient showing as to either performance or prejudice. *Strickland*, 466 U.S. at 697; *Blanton*, 543 F.3d at 235-36. The Fifth Circuit has determined that both prongs of the *Strickland* test involve mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Whether counsel made a decision to pursue a particular trial strategy is a question of fact and whether that strategy was reasonable is a question of law. *Wood v. Allen*, 558 U.S. 290, 301, 304 (2010); *Trottie v. Stephens*, 720 F.3d 231, 244 (5th Cir. 2013). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (internal quotations omitted). Furthermore, because *Strickland* is a general standard, "'a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Richter*, 562 U.S. at 105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial.").

**C. Merits**

**1. Ineffective assistance of trial counsel**

**(a) Failure to investigate**

Petitioner alleges counsel failed to investigate and present evidence that the victim made conflicting statements regarding the assault. (ECF No. 1 at 9).[2] Petitioner argues that, had the victim been questioned about these statements, "there is a reasonable probability of a different outcome." (*Id.*). He raised this claim in his state habeas action, and relief was denied. Petitioner's counsel filed an affidavit in the state habeas action, stating:

> The alleged victim told police officers, EMS workers, and hospital staff that she had been assaulted by the Defendant. Her injuries appeared consistent with her description of how the injuries had occurred.
>
> ***
>
> Trial strategy was discussed about any and all medical records being discussed during the trial and attempting to blame this on the victim being drunk and lying. The Defendant had told me that he was "pretty sure" the injuries to her were all his doing. He wanted to go to trial and did not accept the State's offer because he did not want to go to prison.[3] He wanted probation and would not settle for anything else.
>
> Medical records were introduced from a doctor's visit with Texas Orthopedics several days after the alleged assault. Those medical records indicated that the victim had told a story that her arm was broken by falling down stairs. She did not mention other injuries which had been documented by EMS which clearly were not the result of falling down stairs (for instance, bite marks). My professional opinion was that the records spoke for themselves. Calling a doctor to testify with regard to what she told him would only open the door to further questioning as to her injuries being inconsistent with a fall down the stairs. My trial strategy was to make the alleged victim out to be a liar and did not want to try and further fit any of the "cycle of violence" factors discussed by the one witness, nor the discussion in the Brackenridge Hospital records concerning feelings a victim of domestic violence

---

[2] Petitioner refers to this evidence as "Brady material," although he allows the State provided "information related" to this evidence during discovery. (ECF No. 1 at 9).

[3] Petitioner refused the State's plea offer of 15 years' imprisonment. (ECF No. 12-18 at 11).

might feel. My memory with regard to the Doctor is that I attempted to make contact, but never received any reply. If I do not speak to a witness, I do not call that witness for I fear what they might say. I was fairly certain, based on experience, that the Doctor, if shown other photos would likely agree with the State that some of the injuries were not caused by such a fall. All trial strategy was discussed with the Defendant.

Further, a stern questioning impeaching her with the records and calling her a liar would certainly have opened the door to other potential testimony from previous alleged victims of the Defendant being allowed to testify during guilt/innocence portion of the trial.

(ECF No. 12-36 at 17-18).

The habeas trial court found counsel's affidavit credible and Petitioner's allegations not credible. (ECF No. 12-36 at 26). The habeas court found the following facts:

12. The complainant told police officers that Applicant assaulted her. Officers observed the following injuries: swollen and bruised face and hands, petechiae in both eyes, bruising on her throat, bruises and bite marks on arms and shoulder blades, bruising on legs, and abrasions on her arm and back.
13. Counsel believed her injuries to appear consistent with her description of the assault.
14. Several days after the incident, the complainant visited Texas Orthopedics where she told them that her arm was broken by falling down the stairs.
15. Counsel believed that impeaching her with the records and calling her a liar would have opened the door to testimony from previous alleged victims.
16. Counsel did argue about the records from Texas Orthopedics to the jury during closing argument.

(ECF No. 12-36 at 27).

The court found counsel made a reasonable strategic decision about how to deal with the victim's conflicting statements and concluded Petitioner had "failed to demonstrate that counsel's representation fell below an objective standard of reasonableness when he failed to impeach the complainant with the medical records." (ECF No. 12-36 at 27). The state court's denial of this claim was not an unreasonable application of *Strickland*. The state habeas court's factual determinations,

including its credibility findings, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013). Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689. Counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Id.* at 690; *see also Trottie*, 720 F.3d at 243-44. Furthermore, the reasonableness of counsel's actions is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. The record supports the state court's conclusion that counsel adequately investigated this evidence and made a reasoned strategic decision with regard to the use of this evidence. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### (b) failure to investigate witnesses and the State's evidence

Petitioner contends trial counsel failed to investigate witnesses and the State's photographic evidence of the victim's injuries. (ECF No. 1 at 10-11). He alleges counsel "failed to make diligent effort to locate, interview, and bring to court the evidence and witnesses which would have supported the defense." (ECF No. 1 at 10). He also asserts he "provided the names of the possible whereabouts of various witnesses to trial counsel . . . [and] suggested various types of evidence for [counsel] to investigate." (*Id.*). Petitioner raised these claims in his state habeas action, and relief was denied. Counsel's affidavit in that matter states:

> I spoke with any and every name that the Defendant gave me regarding any possible defense of the instant offense as well as any punishment offense.
>
> There was one name given to me during the course of trial regarding the instant offense that we actually tracked down during the course of the trial. He told us that the last time he had laid eyes on the Defendant and alleged victim was several hours before . . . the incident made the basis of the charges. My feeling was that his

> testimony would not have terribly useful, and proved that not only had the alleged victim been drinking, but that the Defendant had as well.

(ECF No. 12-36 at 18). The habeas trial court found: "Counsel spoke with the people that Applicant gave to him about a possible defense and about punishment offenses. . . ." (ECF No. 12-36 at 28). The court concluded Petitioner had failed to establish counsel's performance was deficient or any resulting prejudice.

The state court's denial of relief was not an unreasonable application of *Strickland*. The state court's credibility findings are supported by the record in this matter, which indicates counsel thoroughly investigated the victim's claims, the State's evidence, and potential witnesses. Petitioner has not shown either deficient performance or prejudice with regard to counsel's pretrial investigation and preparation for trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (holding that, without a specific, affirmative showing of precisely what evidence or testimony was rendered unavailable due to a trial counsel's failure to investigate, the petitioner had not established *Strickland*'s prejudice requirement). Counsel is not required to investigate when he has "reason to believe that pursuing certain investigations would be fruitless or even harmful," or when any information that might be discovered would be of only collateral significance. *Trevino*, 829 F.3d at 349. Nor is counsel ineffective for failing to present insufficiently described, cumulative, or strategically omitted testimony. *Trottie*, 720 F.3d at 244. Conclusory allegations of prejudice are insufficient to obtain habeas relief on an ineffective assistance of counsel claim. *Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008). Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

**(c) failure to recall and cross-examine the victim**

Petitioner asserts counsel failed to recall and cross-examine the victim when, on the morning of closing argument, counsel received the medical records containing her statement that her injuries were caused by a fall. (ECF No. 1 at 12).[4] Petitioner raised this claim in his state habeas action and relief was denied. In that matter, the trial court found credible counsel's statement that his decision regarding cross-examining the victim with regard to these records was strategic: "impeaching [the victim] with the records and calling her a liar would certainly have opened the door to other potential testimony from previous alleged victims of the Defendant being allowed to testify during the guilt/innocence portion of the trial." (ECF No. 12-36 at 18).

The state court's denial of relief on this claim was not an unreasonable application of *Strickland*. The record indicates counsel developed a reasonable trial strategy, based in part on Petitioner's admissions to counsel, and that counsel thoroughly cross-examined all of the State's witnesses, including the victim. Counsel's cross-examination of witnesses is generally a matter of trial strategy for purposes of the *Strickland* analysis. *See Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir.), *cert. denied sub nom. Castillo v. Davis*, 137 S. Ct. 279 (2016) ("Speculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against."). The federal courts must defer to "counsel's judgment about the presentation and questioning of witnesses when such choices are the result of a conscious and informed decision on trial tactics." *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011) (internal quotations omitted).

---

[4] Petitioner again refers to this evidence as "Brady material," although the existence of the evidence was disclosed to the defense. (ECF No. 1 at 12).

Even if Petitioner could establish counsel's performance was deficient, he is unable to establish prejudice. He asserts:

> . . . trial counsel [could have] recalled the complainant [] and re-crossed-examined her on her prior testimony concerning her injuries that she claimed that Mr. Sonnenberg assaulted her on 10/29/2012. Trial counsel [] could have provided the medical records (Brady Material) suggesting otherwise, which would have created a reasonable doubt that Mr. Sonnenberg had nothing to do with assaulting the complainant as she testified. Had trial counsel made a diligent effort to recall the complaint and cross-examine her concerning the Brady material (medical records) there is a reasonable probability of a different outcome.

(ECF No. 1 at 13).

Petitioner is unable to show a reasonable probability that, had counsel recalled the victim and questioned her about the newly-produced medical records, the jury would have acquitted him. As noted by defense counsel, the allegedly exculpatory "medical records" indicated the victim told the examining physician that her broken arm was caused by a fall; however, this explanation of how her arm came to be broken would not have explained all of her injuries. Furthermore, Petitioner admitted to his counsel that he caused the victim's injuries and counsel used the victim's statements in the later-disclosed records to buttress his allegation that the victim's testimony was not credible. Additionally, had counsel recalled the victim and questioned her with regard to her contradictory statements in the medical records, she most likely would have repeated her sworn testimony that Petitioner had assaulted her, including choking her, which testimony the jury presumably found credible by their verdict. Accordingly, given the weight of the other evidence against Petitioner, he is unable to establish prejudice arising from this alleged error and the state court's denial of relief was not an unreasonable application of *Strickland*. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008).

**(d) failure to subpoena the testimony of a treating physician**

Petitioner contends counsel was ineffective for failing to subpoena the examining physician at Texas Orthopedics to testify about the cause of the victim's injuries. (ECF No. 1 at 13). He raised this claim in the state habeas action and relief was denied. Counsel's affidavit in that matter states:

> . . . Calling a doctor to testify with regard to what [the victim] told him would only open the door to further questioning as to her injuries being inconsistent with a fall down the stairs. . . . My memory with regard to the Doctor is that I attempted to make contact, but never received any reply. If I do not speak to a witness, I do not call that witness for I fear what they might say. I was fairly certain, based on experience, that the Doctor, if shown other photos would likely agree with the State that some of the injuries were not caused by such a fall. . . .

(ECF No. 12-36 at 18). Counsel further averred he "did argue about the records from Texas Orthopedics to the jury during closing argument." (ECF No. 12-36 at 27). The habeas trial court determined counsel did contact the doctor, who did not respond, and that counsel's alleged failure to call the doctor to testify was the result of sound trial strategy. (ECF No. 12-36 at 28). The court concluded Petitioner "failed to demonstrate that counsel's representation fell below an objective standard of reasonableness when he failed to subpoena the doctor." (*Id.*).

The state court's denial of this claim was not an unreasonable application of *Strickland*. "Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)). A petitioner who alleges ineffective assistance of counsel based on the failure to call a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527,

538 (5th Cir. 2009) (citations omitted). Absent a showing that a particular witness would have offered testimony favorable to the defense, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Therefore, the state court's denial of relief on this claim was not an unreasonable application of *Strickland*.

### (e) failure to request funds for an investigator

Petitioner contends counsel should have requested funds for an investigator, to interview witnesses and to investigate his claim that the victim produced photos of injuries from an auto accident and then testified she sustained those injuries as a result of Petitioner's alleged assault. (ECF No. 1 at 14). Petitioner refers the Court to affidavits from potential witnesses purportedly attached to his state habeas pleadings; however, those affidavits do not appear in the record of the state habeas pleadings.[5]

In his state habeas action Petitioner alleged the investigator could have interviewed witnesses favorable to his defense. (ECF No. 12-37 at 71). He further alleges an investigator would have obtained toxicology evidence that the victim was drunk and using drugs on the night of the assault, and discovered there was no "biological evidence" on the boots allegedly used in the assault. (ECF No. 12-37 at 87). He also alleged the investigator would have discovered the photos showing

---

[5] Attached to Petitioner's state habeas pleadings are his own affidavits, (ECF No. 12-37 at 105-19); his mother's affidavit (ECF No. 12-37 at 121-23); his aunt's affidavit (ECF No. 12-37 at 134-35); the affidavit of his sister-in-law, Ms. Lincoln (ECF No. 140-42); and his brother's affidavit (ECF No. 145-48). Although he does not provide affidavits from these potential witnesses, Petitioner asserts Mr. Nail would have testified that, contrary to her testimony, the victim had been in Mr. Nail's apartment drinking and being "rude and inappropriate" on the day of the assault; Ms. Bradley would have testified the victim told her she sustained the injuries from falling down stairs; Mr. Townley would have testified the victim had accosted Petitioner on previous occasions; Mr. Plower would have testified the victim was a dishonest person and had verbally abused Petitioner; and Mr. Splendorio would have testified the victim was a "violent person" who had assaulted Mr. Splendorio. (ECF No. 1 at 14; ECF No. 12-37).

the victim's injuries were taken after she was involved in an auto accident rather than after the alleged assault. (ECF No. 12-37 at 64). As previously noted, in counsel's state habeas affidavit he stated that he "spoke with any and every name that the Defendant gave me regarding any possible defense of the instant offense," and that he "tracked down" one witness proffered by Petitioner but concluded this witness's testimony "would not have terribly useful" and might have been harmful. (ECF No. 12-36 at 18). The state habeas trial court did not discuss this claim in its findings of fact or conclusions of law recommending the writ be denied.

The state court could have reasonably concluded Petitioner failed to establish any prejudice arising from his counsel's alleged failure to hire an investigator. To the extent any of the suggested witnesses' testimony was admissible, counsel was able to establish the content of their proposed testimony through cross-examination of the victim. Counsel also challenged the victim's testimony regarding the boots and her intoxication during cross-examination. In addition to the victim's photographs of her own injuries, the jury was shown photos of the injuries taken by the Austin Police Department. Because Petitioner fails to establish that counsel's alleged failure to hire an investigator did not prejudice the defense, the state court's denial of this claim was not an unreasonable application of *Strickland*.

**(f) failure to assert self-defense**

Petitioner contends he only assaulted the victim in self-defense, and that his trial counsel rejected this strategy because asserting this defense would require Petitioner to testify. (ECF No. 1 at 16). He alleges:

> Trial counsel would not put Mr. Sonnenberg on the stand to testify in his own defense, though Mr. Sonnenberg wanted to. Trial counsel told Mr. Sonnenberg that if he testified the prosecutor would be able to cross-examine him regarding his prior

criminal history, but that was incorrect advice, and this faulty advice resulted in Mr. Sonnenberg choosing not to testify in his own defense. Mr. Sonnenberg did not have any prior convictions for felonies or crimes of moral turpitude which would have been admissible to attack his credibility as a witness. Also there was no other reason to believe that Mr. Sonnenberg's prior criminal history would have otherwise become admissable (sic) at the guilty innocence phase of the trial.

(*Id.*). Petitioner raised this claim in his state habeas action, (ECF No. 12-37 at 65), and relief was denied, without any discussion of or reference to this claim.

Petitioner's allegation that he wanted to testify is belied by the record. At the close of the State's case, Petitioner was placed under oath and questioned by his counsel:

MR. EVANS: Now, I explained to you over and over again that you have the right to testify, absolute right to testify. It's your choice in a trial. You have the absolute right not to testify should you chose not to do so. Is that correct?
THE DEFENDANT: Yes, sir.
                                    ***
MR. EVANS: Now, as far as your decision whether or not you want to testify today, you have decided you do not want to testify at this point in trial; is that correct?
THE DEFENDANT: Yes, sir.
MR. EVANS: And that is your decision and your decision alone?
THE DEFENDANT: Yes, sir.
THE COURT: I am not exerting any influence or force upon you to make that decision, that's your own choice of your own freewill; is that right, sir?
THE DEFENDANT: Yes, sir.

(ECF No. 12-21 at 159-60).

Additionally, Petitioner incorrectly states that counsel's advice, that Petitioner's prior criminal history would not have been admissible had he testified, is a misstatement of the law. Petitioner had two prior convictions for assault family violence against a woman. (ECF No. 12-14 at 28). The Texas courts have found assault family violence to be a crime of moral turpitude, and therefore admissible pursuant to Texas Rule of Evidence 609, when the assault is against a woman.

16

*Davis v. State*, 533 S.W.3d 498, 515 (Tex. App.—Corpus Christi-Edinburg 2017, pet. ref'd) (collecting cases on point).

Furthermore, counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. "[C]ounsel has wide latitude in deciding how best to represent a client. . . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003); *see also Trottie*, 720 F.3d at 243 (holding the failure to present a particular line of argument is presumed to be the result of strategic choice). Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689. Petitioner has not overcome the presumption that his counsel's conduct was strategically motivated nor refuted the presumption that counsel's actions fell within the wide range of reasonable professional assistance. *See Richter*, 562 U.S. at 105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial."); *Knowles*, 556 U.S. at 123 (holding that *Strickland* is a general standard and, accordingly, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). "On habeas review, if there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard, the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (internal quotations omitted). Furthermore, Petitioner fails to establish a reasonable probability that, had counsel utilized a different defense strategy, the result of the proceedings would have been different. *Chanthakoummane v. Stephens*, 816 F.3d 62, 70 (5th Cir.), *cert. denied sub nom. Chanthakoummane v. Davis*, 137 S. Ct. 280 (2016); *Livingston v. Johnson*, 107 F.3d 297, 307 (5th Cir. 1997). Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

**(g) conflict of interest**

Petitioner alleges his counsel represented him despite a conflict of interest in the form of unpaid attorney's fees, which he asserts adversely affected counsel's performance. (ECF No. 1 at 17). Petitioner raised this claim in his state habeas action, and relief was denied. In his state habeas action Petitioner asserted he initially retained counsel, and then upon a showing of indigency, counsel was appointed. He further alleges trial counsel told Petitioner:

> "Graham you owe me a lot of money". Applicant then told [counsel] that he was broke, but [counsel] told him that if he don't pay him his money, "that" he would promise him he was going to prison. Then [counsel] said: "Your parents have money, so call your MaMa and have her bring it to me in cash.["] Then from that point, everything went down hill and escalated into a very bad situation.

(ECF No. 12-37 at 77). Counsel did not address this exact claim in his state habeas affidavit, stating:

> Mr. Sonnenberg has alleged that I created a conflict of interest by repeatedly cursing at and threatening him with various things. Again, this is an outright lie. None of his assertions are true. Again, look to his trial volume 5, page 160, line 9, wherein I ask Him "Do you have any complaints about my representation of you up to this point sir?" To which, he replies, "No, sir. There aren't words to describe what you are doing."

(ECF No. 12-36 at 19).

The state habeas trial court found counsel's statements credible and Petitioner's statements not credible. (ECF No. 12-36 at 26). The court, applying *Cuyler v. Sullivan*, concluded: "Applicant has failed to show that counsel had an actual conflict of interest or that it colored his actions during trial." (ECF No. 12-36 at 29). The state court's denial of this claim was not contrary to or an unreasonable application of federal law. In *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the Supreme Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. However, prejudice is presumed only if the defendant demonstrates counsel "actively

represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350. Under the *Cuyler* test, an "actual conflict" exists when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client. *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). The mere possibility of a conflict, absent a showing that the attorney actively represented conflicting interests, is not sufficient. *Cuyler*, 446 U.S. at 350 ("But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").

The state habeas trial court's credibility findings are entitled to a presumption of correctness unless unsupported by the record or rebutted by the petitioner with clear and convincing evidence. The state court record supports the habeas court's credibility finding and its implicit conclusion that Petitioner failed to establish counsel's performance was "adversely affected" by any disagreement over counsel's fees. Accordingly, Petitioner is not entitled to relief on this claim.

### (h) failure to request a bond reduction

Petitioner contends counsel was ineffective for failing to seek a reduction in his bond. (ECF No. 1 at 20-21). In his state habeas pleadings Petitioner made only a conclusory allegation with regard to this claim, alleging "trial counsel failed to request a bond reduction lower than 1/2 million dollars plus bond that the applicant was under, which was excessive in violation of the [Eighth] Amendment of the United States Constitution." (ECF No. 12-37 at 93). In his affidavit in the state habeas action Petitioner made only a passing reference to this claim, asserting counsel ignored his request to seek a reduction in his bond. (ECF No. 12-37 at 14). The state habeas court denied relief without a discussion of this claim.

Petitioner fails to meet his burden of showing counsel's performance was deficient or that he was prejudiced by any alleged deficiency. The record indicates Petitioner's bail was originally set at $250,000 on October 9, 2013, (ECF No. 12-14 at 11), and by June 25, 2014, bail was reduced to $25,000. (ECF No. 12-13 at 24). Additionally, even if counsel performed unreasonably in failing to seek to reduce the bail amount, Petitioner fails to assert any reason this alleged error could have affected the outcome of the case. Moreover, Petitioner does not propose any legal basis for obtaining a lower bond or bail, or demonstrate that his counsel was deficient for failing to raise a particular argument which, if presented, would have been successful. Absent a showing that counsel failed to raise a meritorious argument and that the outcome would have been different had counsel raised the argument, a petitioner fails to demonstrate deficient performance or actual prejudice. *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006). Accordingly, the state court's rejection of this claim was not an unreasonable application of *Strickland*.

**(i) cumulative error**

Petitioner argues the combination of counsel's alleged errors amount to cumulative ineffective assistance of counsel. (ECF No. 1 at 10 n.1; ECF No. 14 at 78-80).

Federal habeas relief is only available for cumulative errors that are of a constitutional dimension. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007); *Livingston*, 107 F.3d 309. As previously discussed, none of Petitioner's ineffective assistance claims are meritorious. Petitioner has not identified errors of counsel of constitutional dimension. Accordingly, there are no errors to "cumulate" and relief on this claim must be denied.

**2. *Brady* claim**

Petitioner argues the prosecution violated the doctrine of *Brady v. Maryland* by not timely providing the defense with the Texas Orthopedics medical records indicating the victim sustained one of her injuries by falling down stairs rather than from the assault. (ECF No. 1 at 18-20). He raised this claim in his state habeas action, (ECF No. 12-37 at 74), and relief was denied without a discussion of the merits or any procedural default of the claim.

The elements of a *Brady* claim are: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material" to the defendant's guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). The good or bad faith of the prosecution in suppressing the evidence is irrelevant. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

Although the evidence was of some exculpatory value, the evidence was not suppressed by the State. Several months prior to the trial the State filed a "Notice of Disclosure of Brady Material," which states: "In the medical records from Texas Orthopedics, [the victim] told medical staff on November 7, 2012, that she sustained the injury to her left forearm by falling down some stairs." (ECF No. 12-13 at 44). At trial, Petitioner's counsel complained that he did not receive the actual records until the day of trial, but this does not mean the State suppressed the evidence. "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). Because the evidence was not suppressed, i.e., because the existence and substance of the evidence was disclosed in pretrial discovery and the actual documents were available to the

defendant through the exercise of reasonable diligence, the state court's denial of this claim was not clearly contrary to or an unreasonable application of federal law.

### 3. Double jeopardy

Petitioner asserts his convictions for aggravated assault and strangulation assault are duplicative offenses and, therefore, his conviction for both crimes violates his right to be free of double jeopardy. (ECF No. 1 at 20). Petitioner raised this claim in his appeal, and the appellate court overruled this issue. The appellate court found the claim procedurally defaulted, stating:

> Sonnenberg failed to object to the disjunctive jury charge before it was presented at trial and failed to show a double-jeopardy violation clearly apparent on the face of the record. He is thus barred from raising his double-jeopardy claim in this appeal. We overrule issue one.

*Sonnenberg*, 2016 WL 3475200, at *3 (internal citations omitted). In finding no double jeopardy violation apparent on the face of the record, the court stated:

> When separate theories of an offense are issued to the jury disjunctively, a double-jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double-jeopardy violation and there is sufficient evidence to support that valid theory. [*Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006)]. "The fact that the jury's verdict *could have* relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation 'clearly apparent on the face of the record.'" *Id.* (emphasis added).

> Error is not clearly apparent on the face of this record. In the aggravated-assault charge, the jury was instructed to convict if it found beyond a reasonable doubt that Sonnenberg intentionally, knowingly, or recklessly caused bodily injury while using or exhibiting a deadly weapon—here his hand or foot—that in the manner of its use or intended use was capable of causing death or serious bodily injury. *See* Tex. Penal Code § 22.02(a)(2). The charge permitted conviction upon sufficient proof that he seized her neck with his hand and applied pressure, applied pressure to her neck with his foot, or struck her with his foot. Under the assault-strangulation-enhanced offense, the jury was instructed to convict if it found beyond a reasonable doubt that Sonnenberg intentionally, knowingly, or recklessly caused bodily injury to Manley in several alternative ways as well as that Sonnenberg

committed the offense by intentionally, knowingly, or recklessly impeding the normal breathing and circulation of Manley's blood by (a) seizing her on and about the neck with his hand, (b) applying pressure to her neck with his hand, or (c) applying pressure to her neck with his foot. *See id.* § 22.01(b–1). The first two modes of the enhancement essentially track the aggravated assault charge, but do not contain a parallel with the third alternative mode of aggravated assault—striking Manley with his foot. That mode of aggravated assault, unlike the three assault strangulation enhancement options, does not require a showing of anything resembling pressure to her neck. Accordingly, the jury might have convicted Sonnenberg of an aggravated assault that is factually distinct from the assault strangulation offense and does not evoke double-jeopardy concerns.

The record contains sufficient evidence on which the jury could have convicted Sonnenberg for aggravated assault based on his striking Manley with his foot. Manley testified that Sonnenberg kicked her in the stomach and back so hard that she felt like her body was moving across the floor. She said that the kicks hurt. She testified that she did not remember telling hospital personnel that he kicked her in the head, but evidence showed that she did. An emergency-room physician testified that a foot kicking a person in the head in the circumstances described would be considered a deadly weapon. Manley's EMS report showed that she had contusions on her head and was slurring her speech. The jury saw pictures of her injuries, including bruising on her face. Because the jury might have convicted Sonnenberg for aggravated assault under the foot-striking theory that addresses different conduct than the assault-strangulation offense, we conclude that a double-jeopardy violation is not clearly apparent on the face of the record. . . .

*Id.* at *2-3.

The state court's denial of relief on Petitioner's double jeopardy claim was not an unreasonable application of federal law. A defendant's right to be free of double jeopardy is violated when they are punished twice for the same offense.

The longstanding test for determining whether two statutes constitute the "same offense" for double jeopardy purposes was first developed in *Blockburger v. United States*, 284 U.S. 299[] (1932). There, the Supreme Court explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304[]. A court applying the *Blockburger* test must "focus[] on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof

offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n.17[] (1975). . . .

*Austin v. Cain*, 660 F.3d 880, 887 (5th Cir. 2011) (some internal citations omitted). When an offense constitutes only one of several alternative elements of another offense, the two are not the same offense for double jeopardy purposes. *Id.* at 892.

Petitioner's conviction on each offense of conviction required proof of an element the other did not. To be found guilty of aggravated assault with a deadly weapon, in violation of Texas Penal Code § 22.02(a), the State must establish the defendant caused bodily injury using a deadly weapon. *See Richards v. Quarterman*, 578 F. Supp. 2d 849, 864 (N.D. Tex. 2008). To be found guilty of assault strangulation family violence, the State must prove the defendant caused bodily injury by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. *See* Texas Pen. Code § 22.02 (a)(1) & 22.02(b)(2)(B). Because each offense requires proof of an element that the other does not, Petitioner's right to be free of double jeopardy was not violated by his conviction on each offense.

As the appellate court noted, the jury could reasonably find Petitioner committed the offense of strangulation assault by using his hands to restrict the victim's breathing, and committed the offense of assault by kicking her. The jury did not necessarily need to find that Petitioner committed both strangulation and assault by using his hands to choke the victim or by using his feet to both kick her and restrict her breathing. Accordingly, his conviction on both assault and strangulation assault did not violate his right to be free of double jeopardy.

## EVIDENTIARY HEARING

Petitioner asks the Court to grant him an evidentiary hearing. Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to plead any allegations that would entitle him to a hearing. Accordingly, Petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law. Accordingly, habeas corpus relief on Petitioner's claims that he received ineffective assistance of trial counsel, that the prosecutor violated the doctrine of *Brady v. Maryland*, and that his right to be free of double jeopardy was violated, must be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny

a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. *Id.* § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's section 2254 petition on substantive grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court shall not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Application for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

It is further **ORDERED** that Petitioner's Request for an Evidentiary Hearing [ECF No. 15] is **DENIED.**

It is finally **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on January 8, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE